UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| H & W MOTOR EXPRESS CO. | ) |
| | ) Bankruptcy No. 02-02017 |
|     Debtor. | ) |
| | ) |
| LARRY S. EIDE, | ) |
| Chapter 7 Trustee, | ) |
| | ) Adversary No. 04-9106 |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| URBAN R. HAAS, et al, | ) |
| | ) |
|     Defendants. | ) |

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

This matter came before the undersigned on December 1, 2006 on the Haas Defendants' Motion for Summary Judgment on Claims of Plaintiff Larry S. Eide, Chapter 7 Trustee. Trustee Larry Eide appeared as Plaintiff. Attorney William McCartan appeared for Defendants Urban and Patricia Haas. Attorney Jim Hellman appeared for Third Party Defendant Roger Waldner. After hearing arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

**STATEMENT OF THE CASE**

Trustee's complaint seeks to recover property of the estate. Trustee asserts Defendants Urban and Patricia Haas had a prepetition agreement to transfer shares of stock in Riverside Tractor-Trailer Co. to Debtor, but they refused to do so. The Haases have since sold the stock for $487,000. Trustee seeks turnover of the stock or the proceeds of the sale.

The Haases counterclaim that Debtor and/or Roger Waldner failed to pay for the Riverside stock as required by their stock purchase agreement. They also assert a third party claim against Mr. Waldner, arguing his related action in U.S. District Court violates the automatic stay and exposes them to inconsistent verdicts and/or duplicate liability.

The Haases assert they are entitled to summary judgment against Trustee. They argue the stock purchase agreement required Mr. Waldner and/or Debtor to pay for the Riverside shares. The Memorandum Agreement on which Trustee bases his claim is not an enforceable contract, but merely an agreement to agree. There were conditions precedent to the stock transfer which Mr. Waldner or Debtor have failed to satisfy. Additionally, the Haases argue Debtor was not a party to the agreements and thus has no rights to the Riverside stock.

Trustee resists summary judgment. He asserts the Memorandum Agreement requiring the Haases to turn the stock over to Debtor is not contingent on performance under the Stock Purchase Agreement.

The essential issue in this proceeding is whether Debtor has an interest in the Haases' Riverside stock which is subject to turnover to Trustee. As related actions are pending in the U.S. District Court and in Illinois, the Court will attempt to frame its ruling narrowly in order that it does not have undue effect in the other actions.

## STATEMENT OF UNDISPUTED FACTS

Roger Waldner and the shareholders of H & W Motor Express Co. entered into several agreements in early 2001 whereby Mr. Waldner intended to purchase H & W. The shareholders were descendants of the founders of the company in the Haas, Kraus, Wissel and Piekenbrock families. The Haases are two of the H & W shareholders.

The most relevant documents are a Memorandum of Understanding effective January 4, 2001 (Exhibit "A" to the Complaint) (hereafter "January 4 Memorandum"), a "Waldner – H & W Motor Express Memorandum of Understanding" effective January 9, 2001 (Exhibit "B" to the Complaint) (hereafter "January 9 Memorandum"), a Stock Purchase Agreement dated "Draft 1/9/01" between the Haases and Mr. Waldner (Exhibit A to Defendants' Answer, Doc. 23) (hereafter "Haas Side Agreement"). All three of these documents were signed on the same day – January 9, 2001. Additionally, the record contains a Stock Transfer Agreement effective January 4, 2001 with signatures dated March 29 and 31, 2001 (copy attached to Trustee's Supplemental Memorandum, Doc. 54) (hereafter "Final Agreement"). This concerns the transfer of the H & W stock. The parties dispute whether this agreement was ever finalized or delivered.

2

The January 4 Memorandum states the Shareholders and Directors of H & W Motor Express Co. wished to turn over management and transfer their stock interest in H & W and Mr. Waldner was interested in becoming the new manager and owner of the company. The Shareholders agree to turn over management to Waldner and transfer their H & W stock to him. The Shareholders immediately transferred total management of H & W to Waldner and transferred all their H & W stock to Waldner by the end of January 2001.

The January 4 Memorandum further states in paragraph 4:

> Shareholders agree that they will surrender all Riverside Tractor Trailer stock to H & W Company to form a block of all shares of Riverside Tractor Trailer stock presently owned by Company and Shareholders. This stock will be used as collateral on Letter of Credit at bank to secure outstanding work comp. Liabilities.

All the Riverside stock owned by the H & W Shareholders was transferred to Waldner, except that owned by the Haases. The Haases did not sign the January 4 Memorandum, but instead signed an acknowledgment as Shareholders of H & W that they read and understood the contents of the agreement and decided not to sign the document as shareholders.

The January 9 Memorandum states Defendants Urban and Patricia Haas would not participate in portions of the January 4 Memorandum, including Paragraph 5 which details a five year profit sharing plan between the shareholders and Roger Waldner and Paragraph 7 wherein the Shareholders agree to replace "all factored monies (est. $2.2 million) within the next five years if needed by the Company." The January 9 Memorandum continues:

> THEY [Urban and Patricia Haas] THEREFORE will agree to give free and clear to H & W Motor Express Co. 121,750 shares of Riverside Tractor at a book value of $4.35 per share for a total value of $530,000.

Trustee relies on this language to support his claim for turnover from the Haases. The Final Agreement in paragraph 10 also calls for the shareholders to surrender all Riverside Tractor-Trail Co. stock to H & W.

The Haas Side Agreement is stamped "Draft 1/9/01" and signed by the Haases as Sellers and Roger Waldner as Buyer. Mr. Waldner wrote below his signature "in good faith for H & W."

This document is titled "Stock Purchase Agreement."  The purchase price for the Haases' Riverside stock is set out in Paragraph 2 as $2.18 per share or $265,000.  Paragraph 1 notes this amount equals the Haases prorata share of working capital which the Shareholders of H & W had agreed to provide as part of the H & W transaction with Mr. Waldner.  Paragraph 5 provides for an adjustment of the purchase price up to an additional $265,000, depending on certain future events.  The two amounts total the book value of the stock of $530,000, as set out in the January 9 Memorandum.

## CONCLUSIONS OF LAW

A motion for summary judgment may only be granted when there are no material facts in controversy, and the moving party is entitled to a judgment as a matter of law.  Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, the Court views the evidence in a light most favorable to the nonmoving party.  In re Marlar, 267 F.3d 749, 755 (8th Cir. 2001).  The moving party has the burden of showing that there is no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"It is a cardinal principle of contract law the parties' intention at the time they executed the contract controls." Hofmeyer v. Iowa Dist. Court, 640 N.W.2d 225, 228-29 (Iowa 2001). Under Iowa law, it is well settled that instruments relating to the same transaction which are contemporaneously executed should be construed together.  AmerUs Bank v. Pinnacle Bank, 51 F. Supp. 2d 994, 999 (S.D. Iowa 1999); Taylor Enter., Inc. v. Clarinda Prod. Credit Ass'n, 447 N.W.2d 113, 115 (Iowa 1989); Allison Ford Sales v. Farmers State Bank, 86 N.W.2d 896, 898-99 (Iowa 1957). Contemporary contracts aid in interpreting and arriving at the real meaning of a contract.  Fidelity Savs. Bank v. Wormhoudt Lumber Co., 104 N.W.2d 462, 465 (Iowa 1960).

## ANALYSIS

The Haases set out several arguments in support of summary judgment.  They assert that if the January 9 Memorandum is a valid and enforceable contract, Debtor and Mr. Waldner never paid for the Riverside stock as agreed in the Haas Side Agreement. They also argue that the January 9 Memorandum is not enforceable because it is merely an agreement to agree, rather than a valid contract.  The Haases further assert the conditions arising in the January 4 Memorandum have not been satisfied and this excuses them from performing under the January 9 Memorandum.  Finally,

4

the Haases assert the January 9 Memorandum was between them and Waldner, and Debtor cannot claim any rights thereunder.

As noted above, the Court prefers to keep the issues in this case narrowly defined because of the pendency of other actions in other courts. Based on the foregoing law, the Court believes the Haases' first argument is determinative.

Iowa law provides that documents contemporaneously executed should be construed together. There is no genuine dispute that the January 4 Memorandum, the January 9 Memorandum and the Haas Side Agreement were all executed on January 9, 2001. Construing these documents together, it is apparent that the Haases and Waldner intended that Waldner would purchase the Haases' Riverside stock.

Through the Haas Side Agreement, titled "Stock Purchase Agreement," the Haases contracted with Waldner to be treated differently than the other Shareholders. The other Shareholders turned over their Riverside stock to H & W without payment. In exchange for those transfers and other provisions in the agreements, those Shareholders agreed to infuse H & W with working capital and receive a share of the profits of H & W over a five-year period. In contrast, the Haas Side Agreement specifically excluded the Haases from those two provisions of the January 4 Memorandum and provided that, instead, they would receive payment of one-half book value for transferring their Riverside shares to H & W.

By seeking turnover of the Haases' Riverside stock, Trustee is, in effect, asking the Court to ignore the Haas Side Agreement and treat the Haases like the other H & W Shareholders. The Court refuses to do so. Simply put, because neither Waldner nor Debtor ever paid for the Haases' Riverside stock, Trustee is not entitled to turnover of the stock or the proceeds from the sale of the stock.

The Court is not hereby ruling on the validity, enforceability, or effect of any of the relevant documents as they relate to any party other than Trustee and the Haases. The holding in this case is that, assuming without deciding that the relevant contracts are valid and enforceable, Trustee is not entitled to turnover of the Haases' Riverside stock. The Court concludes the Haases are entitled to summary judgment on the Trustee's turnover complaint.

    **WHEREFORE**, the Haas Defendants' Motion for Summary Judgment on Claims of Plaintiff Larry S. Eide, Chapter 7 Trustee, is GRANTED.

    **FURTHER**, a telephonic hearing will be set by separate order to discuss the status of the remaining counterclaims and third-party claims pending in this action.

    DATED AND ENTERED:  December 27, 2006

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE